Our second case is 25-4012 United States v. Castellano. Mr. Tagliabue. Good morning your honors and may it please the court. Michael Tagliabue on behalf of the appellant Joseph Castellano. Just a few years ago the same parties extensively litigated a supervised release condition that imposed a lifetime pornography ban and in 2023 this court held that the government failed to provide sufficient individualized evidence to support the condition. This court reversed and remanded instructing the district court to strike the condition and not to give the government another opportunity on remand to bolster the record. But the following year at the incident supervised release violation hearing the government saw its opportunity to get a second bite at the apple. Sorry just to clarify this was not on remand right? Correct your honor this was a subsequent violation. Back on remand he was he was serving his supervised release and this is a separate revocation hearing. He's done it again. Yes your honor it is a separate revocation hearing. On remand the court did strike the condition and he was not subject to a pornography ban. I friend's position is that the mandate rule and and it shouldn't apply in the future to a subsequent violation hearing but we disagree on that point that the government should have been precluded from re-litigating this issue both by the mandate rule and this court's decision in McLeod. Can I walk through the implications? I'm trying to think of what proposition you're asking us to endorse. Are you asking us to endorse that because of our previous decision in this case at literally no point in the future no matter what he does no matter what evidence the district court receives the district court cannot impose a pornography restriction? Only no your honor that is not our position. I hope so because that would strike me as a very extreme position indeed. No your honor it would just have to be that there would have to be an exception to the mandate rule in the law of the case doctrine. It would have to be some sort of significant change in the law or some sort of new evidence. I mean how about he keeps violating his supervised release? Well your honor. That's a change right? Like because the whole idea is when we revoke people's supervised release and impose a new term I don't know if the expectation but at least the hope is that we're not going to be back here and yet here we are. Why isn't that a significant change? This person's continued inability to actually follow the rules. Your honor I think for a couple reasons. First as far as the mandate rule and the law of the case I think this court has made clear in cases like Eremonia and Doe versus Chow that the exceptions are very limited. But the law of the case doctrine is that based on the evidence that was before the district court the previous time you can't impose this condition. But there was at least two different things between that time and this time. One he violated his supervised release again and two the government presented more and different evidence. So there are already two substantial. So I understand. I mean I think I think our previous decision makes very clear based on the facts and record that it existed at that moment you cannot impose this condition but there's at least two very big changes since now and then so it doesn't seem to me like our previous holding covers the situation. Well your honor I think it still would and I think it goes to the language that this court used in Castellano 1. It wasn't just striking the condition but it was the instruction that the government should not have another opportunity. Right because at the hearing they don't get to do it to have a do-over from the hearing that they failed to present the evidence at. That doesn't mean that if the defendant violates it again we have another hearing they don't get to new evidence. That is correct your honor but I think just general the principles of the mandate rule as this court explained in Doe versus Chau show why it's still appropriate to consider or to keep the mandate in place to say that it still governs in the future. It does govern what governs is based on those facts and evidence that district court can't impose this condition. Well I think or or or absent a reason to reconsider what his terms of supervised release should be which it turns out that when you violate the terms of supervised release any reasonable district court thinks huh I wonder if maybe we need to change those. I think part of the issue here your honor is that the the evidence that the government has marshaled pertains to the treatment provider that it should have called back in 2021 when the parties were before this court litigating this issue. The record makes clear that Miss Hill had been treating Mr. Castellano since at least 2018 so the government could have called her back. That doesn't sound like the mandate rule at all. That sounds like a preclusion doctrine. That's almost sounds like claim preclusion like you could have done this before you didn't do it so now you can't do it. Well your honor I think the mandate rule does have that sort of preclusive effect. I think when in Doe versus Chau this court makes clear the effect of the mandate rule. There there's essentially two sides of the coin. There's first issues that were decided by a higher court. The lower court cannot then reconsider that issue and then there's another side of the coin that pertains to waiver and forfeiture that if if the parties should have brought this issue before and they didn't at the time it's waived under the mandate rule. So with respect to the expert you know that that might make some sense with regard to the historical facts that had already come and passed but as I think my colleagues have pointed out you've now got a whole new set of different violations and the expert obviously what she wasn't a fortune teller she wouldn't have known what your client would do in the future. So I mean the rule that you seem to be imposing would prohibit that expert from ever testifying no matter the change circumstances in the case that didn't seem to make much sense. Your honor a few points on that. First Miss Hill's testimony back in 2021 when the parties were litigating this issue I think would have been largely the same. As her report discusses Mr. Castellano has had issues with the pornography addiction before. I think Judge Rushing your dissent in Castellano. Years have passed I mean to Judge Diaz's point her expertise is not in palm reading right. Her expertise was in her experience with him and her work with similar offenders and you know when years pass and he has a new conduct and she evaluates those years why can't she at least testify to that. Well your honor I think part of it is that in 2021 she would have given the same recommendation as the record makes clear Miss Hill's recommendation is based on her belief that if someone has a child pornography conviction they should not have access to legal adornment. She testified to so much more than that right. She testified specifically about him. Her specific years working with him and seeing how when he has access to this legal pornography it leads to him he's unable to discriminate between and she has seen it escalate etc etc even recently. I mean her testimony is about him specifically and then on cross she did say yeah I wouldn't recommend this for anyone who's under treatment for this sort of problem and we experienced that in previous cases which you know about. It seems that that's probably standard in the industry. So why should the fact that her opinion about him might have been the same in prior years as it is now but she's testifying about different facts. Facts that did not exist then. Your honor I do agree that the report and her testimony does include some facts that were not present back then. She does discuss about progress and treatment back in 2024 but I don't think that we should be dividing his treatment really into chapters. I agree because we we never said you the government can never prove this right. The majority opinion previously said it hadn't been proved right. There wasn't evidence specific to him and the complaint now seems to be the government went and got exactly what the court asked for and we don't think that's fair. Well your honor I think that goes to some of the concerns of the mandate rule and McLeod as well. The concern about promoting interests of finality and both McLeod and he would have had all the finality in the world if he just didn't violate his supervised release again. But right because the district court again you acknowledge the district court on remand and the government to its credit on remand did what we said which is you don't get to just have a new hearing now to try to fix the evidence that you should have presented the first time and the district court accepted that the government accepted that. The only reason we're back here is because he violated again at which point the district court had to decide well given that what should I do now and it just seems weird to say I mean it seems bizarre to say that we're supposed to tell the district court like you can't consider things about the world there's a witness who's willing to testify to things that are directly relevant because at a previous hearing before the most recent violation the government didn't offer this witness and that means they're barred from all time from presenting this witness that just seems deeply weird. But your honor I do think that goes to the hierarchy and finality because essentially it's saying that when it with this case I guess I'll just say this again why doesn't your clients violation of his supervised release break the hierarchy of finality and introduce a substantial change in circumstance that allows us to go right back to where we were before. Well I think first I don't think the district court actually made that finding in these proceedings here and second I think. Sorry what finding don't you think the district court made? What's the finding? That this new violation is the reason that this pornography ban should be here that we can. Wait the district court makes very clear I mean I think that I one reads I understand it's a cold transcript some of you were probably there I was not this reads like a district court that is really sort of beside itself that this defendants repeated inability unwillingness or inability to comply with terms of supervision. I think the district court made very clear that part of the reason we're here is because your client keeps violating his terms of supervision. I don't know how the district court could have been more clear about that. Well your honor part of the issue with repeated violations I mean in Castellano 1 this court discussed how that wouldn't be sufficient to provide sufficient individualized evidence the fact of the violation itself. Great. And I think that concept still applies here and I think it's not just the mandate rule that that should have at least this preclusive effect to foreclose what happened here. I think this court's decision in McLeod should also apply to preclude the government from essentially using a motion to modify as a vehicle to try to get this pornography ban condition back. In McLeod this court held that a defendant can't use a motion to modify to relitigate or to litigate a condition of supervised release on an illegality challenge and I think this court. But that's a forfeiture holding that's because you should have challenged it the first time and because you didn't challenge it the first time we won't let you make a motion to modify to get around the fact that you forfeited this challenge. But again I just don't see how that applies in a situation where there's an interim maybe that applies in a situation if the government without an additional violation moves to modify to add this condition maybe that applies there but again in a world where there's an intervening violation I just don't see how that logic works. Well I think it's because of a few things one I still think the subsequent revocation hearing supervised release still relates back to the original sentencing. Post revocation sanctions do relate to the original sentencing and I think the the issue that the government couldn't move to modify the day after the district court originally re-sentenced Mr. Castellano back in 2024. If the government couldn't have moved to modify then to try to call Miss Hill to provide this evidence I don't think that simply the fact that Mr. Castellano violated in the future should allow the government to then have free reign to bring a motion to modify. I don't think that would allow a defendant in other words if he violates in the future to come back after that violation hearing with the motion to modify to then challenge some sort of supervised release condition that that defendant should have challenged previously at his original sentencing. So our position would just be that the McLeod bar on motions to modify should apply to both adversarial parties the defendant and the government equally that if there should have been some challenge to a supervised release condition brought previously and it wasn't we can't re-litigate that. Here for the government it would be if the government could have had a condition of supervised release previously and then the government tries to belatedly get that condition back then the government shouldn't be allowed to. That's our position as far as McLeod. I do think that McLeod and the mandate rule should have the preclusive effect to prevent what happened here.       . . . .           .    . . . . . . . . . . . Well your honor, I think I would disagree with the framing slightly because, when Mr. Castleano is in treatment with Ms. Hyll, Ms. Hyll can still talk to him and make recommendations about what is healthy for him at the time, and they can resolve that through treatment. They can even talk about his issues with pornography. But when the district court comes in, and the district court's task is to impose conditions of supervised release, that have legal consequences. The district court has duties. It can't be a condition that's a greater deprivation of liberty than reasonably necessary, and that if a defendant violates that condition, that can result in going back to prison. I think that's the concern, is even if this could be something that could be resolved in treatment, it doesn't need the district court to come in, step in at a supervised release condition that can then lead to revocation sanctions and imprisonment down the line. So I think if the court is concerned about Mr. Castleano getting better in the future, our position is just that that should be left to his treatment provider and that the district court didn't need to step in to then add this condition, which would then result in prior revocations or future revocations if he were to violate it. To go back to the mandate rule, I think there's been a lot of concern about whether this mandate or the court's prior mandate should still govern in the future. I do think it does. I think that part of this court's decision in Doe versus Chau is instructive when it talks about the two sides of the coin, and it's that essentially that once a higher court has conclusively established an issue, that issue then doesn't go back to the lower court on remand. I think essentially our position with the mandate rule is that this court's prior 2023 decision decided the issue about the pornography ban and whether the government should have another opportunity to provide evidence. It said no to both of those questions, and so then on remand, those issues didn't go back to the court to then be decided, and I don't think Ms. Hill's testimony should constitute a limited exception to the mandate rule or McLeod because she has been treating him for this many years, and I think this court clearly contemplated that on remand, the government could have asked you that amount of time. All right. Thank you. You've got some time left for rebuttal, Mr. Tagliabue. Thank you. Good morning, and may it please the court. Jacqueline Bechara for the United States. Chief Judge Diaz, you observed that Ms. Hill is not a fortune teller. In the same way, this court was not a fortune teller when it issued its opinion in 2023. If we look at what the court actually said, this is at 60 F 4th at 226, we hold that on the record before the district court, special condition nine isn't reasonably related under 3583 D1 and is overbroad under 3583 D2. Judge Rushing, as you observed, this court's mandate in 2023 pertained to what could occur on remand. This revocation proceeding, which was two steps removed from the revocation proceeding at issue in the 2023 decision, was not part of the remand that this court sent the case back to the district court for. As we maintained in our brief, the parties and the district court complied with this court's mandate when this went back for a resentencing. The district court struck the condition and sentenced Mr. Castellano to two years in prison. Unfortunately, he has since twice more violated his conditions of supervised release in a myriad of ways. This is the fifth revocation proceeding that we're at right now. As you observed, the district court had to be able to address concerns about his complete inability to make progress in treatment, which was new information based on Ms. Hill's observations of his conduct post-dating the remand and, of course, post-dating the previous revocation proceeding. The focus of her report, because that portion of the record is under seal, I'm not going to quote directly from it, but I'm concerned with JA 233 to 234. That's where she discusses at length what was occurring from approximately July 2024 until this revocation proceeding in December 2024. It just reflects a total failure of Mr. Castellano to respond to less restrictive interventions. Can I ask you something that isn't directly related to this but really struck me in the briefs and I'd love some reassurance about why I shouldn't be troubled by it? Can you explain why in August 2024 his probation officer asked him to agree to new conditions of supervised release about legal pornography access and waive his right to counsel? That was really striking to me and I will be candid. If true, deeply troubling to me. Could you tell me what you've been able to determine about that? Yes. What I can tell you up front is that the U.S. Attorney's Office was not involved when that occurred, so our knowledge of sort of what motivated that is limited to what is in the record. Because that doesn't seem like something we should be doing, right, is telling a criminal defendant that he should waive his right to counsel. He should agree to new conditions that are at least adjacent to conditions that an appellate court had previously struck and that he should waive his right to counsel about whether to agree to those conditions. I hear you, Judge Heitens. Of course, Rule 32.1 does allow for modification pursuant to a waiver procedure. Sure. I think your concern is driving that. That he has a lawyer? Right. Yes, I hear you. Of course, the defendant is not contesting any aspect of that, although he did contest it in the district court, right? Right. So he has now waived any challenge to that modification procedure or that sort of intermediate condition that was imposed pursuant to the waiver. Because the mandate rules just as binding on the probation officer as the district court, right? The probation officer doesn't get to decide to, like, hey, would you agree to a condition the Fourth Circuit said is illegal? That's true. Okay. So that's all you have about that topic? Yes. Is there any indication that this is a routine practice of this probation office? That's certainly not in the record. I don't have any information to that effect. Okay. And I don't think the defendant has made that argument as sort of some kind of pattern or practice of this probation office. Sure. And I think, as you acknowledged in my friend's opening argument, I think everyone here, the probation officer, Ms. Hill, and of course the district court was deeply concerned about what they were seeing in sort of Mr. Castellano's just reversion and I think Ms. Hill's testimony was actually that she experienced or witnessed an increase in his consumption and his kind of focus and just the amount of hours that he was dedicating to viewing this material. Everyone was troubled by that and just trying to find a way to help him toward making progress in treatment, rehabilitation, and of course avoiding recidivism, which the district court made a specific finding that the images here actually did appear to depict teens and or children. So can I ask you just to make sure I understand. I understand definitely that you think we're outside the mandate rule, but I just want to press a little bit on what the theory is for why we're outside the mandate rule. Okay. So let's say that on the original remand, I understand that's not what happened here, but on the original remand, the government said the following, we totally understand judge that you can't reimpose special condition nine because the fourth circuit made very clear you can't reimpose special condition nine at this initial proceeding. Do you think that it would have been consistent for the government, consistent with the mandate rule for the government at the original resentencing following our previous remand to ask for a different and more limited pornography condition? Would that have violated the mandate rule? I realize you didn't do that, but do you think you could have done that? There is an argument that part of this court's reasoning in Castellano one was that the scope, the broad sweep of the condition was simply unsupported by the lack of individualized evidence. So I am willing to put forward that possibly. You would have had to do it. You would have had to do it based on the exact evidentiary record that existed at the first hearing. That would be difficult to satisfy our evidentiary burden. So that would be a reason just not to do it. But if you could have done it based on the evidence you presented the first hearing, you think you could have. As long as it's not the same condition, it's narrower, that you could say that it in some ways addressed the concern of the court's opinion. So it's, well, it's not literally the same condition and it's not subject to the same defects that the previous one had. Right. It is not sort of wholly undermining the court's analysis in its prior opinion. Okay. So then the next question is that at this revocation hearing, I understand this new condition is not special, what we called in our previous opinion, special condition nine. This is not, I take your point that this is not literally special condition nine. Do you think the district court could have reimposed special condition nine verbatim at this revocation hearing? So yes, I think this goes to my conception of sort of like what is the mandate and when does the mandate apply? And our top line position is that the mandate dictates what can occur on  And this was not on remand. This was a separate two steps removed from the remand resentencing proceeding. So now let's go one step removed. It's not revocation. It's just six months later, the government moves to modify, to reimpose special condition nine. Because I mean, what makes this sort of tricky, what makes the mandate rule sort of hard in this context is this idea that these are like roving forward looking conditions, right? So, so yeah, let's take the middle ground. The middle ground is the district court doesn't do it on remand, but he also doesn't violate his supervised release. So maybe around the time this probation officer asked him to do something without a lawyer, instead the government had gone to court and said motion to modify to reimpose special condition nine. And there's no violations. Now he's not violated supervised release. And we're focused on the mandate rule as opposed to McLeod? The mandate rule or McLeod, well, either, I guess my, my, my, for, in terms of you said top line, my top line question is, do you think you could have done that? I'm more interested in whether you think you could have done that regardless. And if the, if the answer is because you can't because of McLeod or the mandate, do you think you could have done that? So again, I'm not sure that falls within the letter of the court's mandate, but I think. It starts to get really inconsistent. Consider the spirit of the court's mandate, that would be more difficult. So. So in other words, the violation is doing a lot of work. It is doing a lot of work. However, I think it's important to tease out, there are several distinctions between the application and exceptions to the mandate rule and the function of McLeod and its exceptions. And so I think that, well, okay, so if we just, we, we don't have the new violations, but let's say we have the same pattern of just like complete failure to respond to treatment. That sounds like new factual circumstances that might satisfy an exception to McLeod, assuming that McLeod governs in this posture. I'm not sure that that would, well, I, like I said, I think that would probably violate the spirit of the court's mandate. And it's difficult to argue, well, I guess we could debate, is that alone significant new evidence? Well, haven't we frequently described the mandate is the trial court is not merely required to not do the things we said don't do and not merely required to do the things we expressly said to do. I mean, you said the spirit, I mean, I'm thinking of cases about the mandate rule that literally say the trial court's obligation is not literally only to, it's not a game, you know, it's not, it's not the way that anyone who's interacted with like children, elementary school who respond, well, I didn't literally do the precise thing you told me not to do. And then virtually every person who's ever supervised anyone would say, but surely you didn't think this was consistent with what I told you to do. Right? Right. And that we've described the mandate rule that way sometimes. It's not just enough to say, don't literally violate what you're instructed to do, it's that you have to try faithfully to implement what we said to do. Yes, your honor. And I would just add, my friend suggested that maybe this does implicate something like waiver or forfeiture, but I don't think anyone after the 2021 revocation proceeding was asserting that regardless of what happens in the future, he can never be subject to this type of restriction. And so that was not actually decided by this court's prior opinion. Again, this court's prior opinion was focused on the evidence that was actually in the record at the time. So with respect to that evidence, and I think you were talking early on or beginning to talk about Ms. Hill, and Judge Rushing makes the good point in questions to your colleague about how expansive she was in explaining why the condition that was not appropriate during the earlier proceeding because of a lack of explanation was now appropriate because the defendant seemed to be spiraling and all the reasons that she explained. But I am still a little bit concerned about the fact that all of that really didn't seem to matter because in the end, she was pretty adamant that in all instances, this was a recommendation that she would impose no matter the circumstances. So I mean, how do we square that? I think that is controlled by this court's case in Van Donk where the treatment provider . . . I guess I need to be bound by that. Okay. Tell me why Van Donk. Yes. So in Van Donk . . . Well, Van Donk was factually different though because the expert there at least suggested that she might be open to modifications as treatment evolved, no? I would submit that we have similar testimony from Ms. Hill here. What did she say here? Yes. So Ms. Hill, like the treatment provider in Van Donk, said that she initially bans all new patients from having access to legal pornography. This is at, let me see, JA 137, and then again at JA 139, the quote is when they first come into our treatment, this restriction is imposed. And then they determine on, quote, a case-by-case basis. And in that instance, what she described is basically if someone is able to view, for example, a movie that contains sexual content and they watch it once just for the purpose of watching the movie and they've exhibited that they don't have a problem, then it's fine, were her words. And on the next page at 138, she says we do grant that. The distinction that I think she's making here is that when you have someone who is compulsively re-watching the same scene over and over and over again, that demonstrates an inability to regulate their consumption of this material. And that was really the crux of her explanation as to why this condition was necessary in order for the defendant to make some progress toward treatment here. And also, if you look at her actual request to the district court, and again, this is in the sealed volume, at JA 234, she posited that the court could impose this condition basically until the defendant has demonstrated some ability to regulate his consumption. So this is not a forever ban, although again, in Van Donk, the treatment goes up to her, every patient that she has who's there for sex offender treatment would never have access to child pornography, or I'm sorry, to any pornography for the rest of their lives. So I don't really think that there's any good way to distinguish Van Donk here. Just one additional point that I had here. My friend in the reply and today has repeatedly stated that it's in the record or the record demonstrates that Hill would have provided the same recommendation in 2021 that she did in 2024. That's an argument, that's an inference that my friend is asking you to draw based on her testimony, but that's not actually in the record. She never testified to that effect that she would absolutely have made the same recommendation. We just don't have anything to support that counterfactual here. If the court has no further questions, we ask that you affirm. Thank you very much. May it please the court. Just a few points on rebuttal. I want to pick up where the government left off as far as Miss Hill's recommendation and whether it would have been the same recommendation previously. I think Miss Hill's testimony makes clear that she makes this no pornography recommendation for every person with a child pornography conviction. So I think back in- So did the expert in Van Donk? Well, Your Honor, I think it's slightly different. I think the expert in Van Donk, she testified that she generally has a belief that pornography is unhealthy for everyone. And I also think that when my friend was discussing the distinction between initially prohibiting pornography and maybe allowing that sometime in the future, I don't think we have that same thing here. Miss Hill's testimony about the initial prohibition pertained more to HBO and sort of movies that could contain nudity. I don't think the record ever demonstrates that she would ever allow someone with this conviction to view legal adult pornography. But she did testify that it's more dangerous, I think is how she put it, more dangerous to view for some people than others. And that she would evaluate her patients based on their, how much they, you know, their level of consumption and whether it appears to be addictive and that sort of thing and regulate based on that, right? So she did draw some distinctions and testify for pages about his particular situation. I think that's correct, Your Honor, but I don't think that the record shows that she's ever allowed someone with this conviction to actually view legal adult. But that's not binding on the district court, right? The district court takes her opinion and his job or her job, he or his job was to evaluate whether there was record evidence that this particular defendant needed this restriction. It shouldn't really matter to the district court whether, you know, this expert would also say that every other person she's ever seen needs this, right? He's evaluating her testimony about this particular individual. That's correct, Your Honor, but I think the district court here was focused on the recommendation. And if we look at Joint Appendix 190, the court, when it's imposing this condition, the quote is, the court will impose a second condition that you will not view adult pornography based upon the recommendation of your clinical therapist. All the details set forth in the opinion she's put in this record. So I think that the district court was thinking about this recommendation generally from Ms. Hill. So I think that's our position on the sufficient individualized evidence, is that the district court's finding was based on the recommendation. That's a categorical recommendation. That's what Van Donk and Ellis prohibit. And I think we can look to put a note... Well, they don't prohibit the categorical recommendation for this person. They prohibit a district court imposing it without looking at whether the particular defendant needs it based on the record, right? That's correct, Your Honor. And Van Donk has said, you can't assume that this is good for everybody. You have to determine case by case if it's good for this particular individual. That is correct, Your Honor. I think our point is that the district court was basing this condition on the categorical recommendation. I think it's like Van Donk, if the court had looked to that statement about whether pornography is generally... That's not what the district court said, though, right? In the transcript, the district court pushed back repeatedly against defense counsel saying, well, this is sort of a blanket prohibition. And the district court repeatedly pointed to instances in her testimony and then in the documents she's filed that's under SEAL that related to this particular defendant. Well, I think that's true during her testimony, but I think when the court was imposing the condition, it was focused on that recommendation based on that language on Joint Appendix 190. But Your Honor, we shouldn't even get to that issue here. We should resolve this on McLeod and the mandate rule concerns or based on those doctrines. Judge Heitens, just a moment ago, you were asking my friend about sort of the extent of the mandate rule, and there was discussion about the letter and the spirit of the mandate rule. And this court's decisions on the mandate rule make clear that the district court should be implementing both the letter and the spirit of the mandate rule. And so here, even if the letter exactly wasn't violated, I think the spirit was still violated when the district court allowed the government this opportunity to call Miss Hill when the government could have called her before and then imposed what is a very similar condition to such. All right, I'll give you one last chance, because I really do think this is the part I'm having a fundamental problem. Why isn't it a really big deal that the only reason we were even here was because your client violated these terms of supervised release? Your Honor, I just don't think that that meets one of those limited exceptions to the mandate rule, which this court has described as sort of like exceptional circumstances. There's no change or drastic change in the law. But that presupposes the mandate rule applies. I guess I'm saying that because of that difference, I'm not at all sure why the mandate rule applies at all. Well, Your Honor, I think the mandate rule should apply, because it's a proceeding still before the lower court, after the higher court expressly decided the issue about the pornography ban and the evidence issue. Thank you, Your Honor. Thank you. All right, thank you both for your fine arguments this morning. We'll come down and greet you and move on to our final case.
judges: Albert Diaz, Allison J. Rushing, Toby J. Heytens